IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,          )
                     Plaintiff,       )
                                 )    Case No. 19-CR-3113-7 JB
     vs.                        )
                                 )
ASHLEY ROMERO,              )
                    Defendant.     )

OBJECTION TO PRESENTENCE REPORT AND
MOTION FOR MITIGATING ROLE ADJUSTMENT,
OR ALTERNATIVELY, FOR DOWNWARD VARIANCE

The defendant Ashley Romero, by her attorney, Gregory M. Acton, hereby objects

to the description of her in the presentence report ("PSR") as a "mid-level" distributor and

to the lack of a downward role adjustment, and moves the Court to apply a two-level

minor role adjustment in calculating her guidelines sentencing range.  Alternatively, she

moves the Court to vary downward to a sentence of seventeen months.

As grounds, Ms. Romero states that she was only a minor participant and

substantially less culpable than the average participant in the criminal activity, and that

otherwise a sentence of seventeen months is sufficient, and not greater than necessary, to

satisfy the purposes of federal sentencing, as explained herein.

BACKGROUND

Ms. Romero has pleaded guilty to, and accepted responsibility for, one count of conspiracy to distribute controlled substances, specifically cocaine base and heroin, in violation of 21 U.S.C. § 846. (*See* Indictment 1-3, ECF No. 2.)  She is named only in count one of a nineteen count indictment.  The amounts of cocaine and heroin in count one are unspecified, but she is responsible for one ounce of heroin[1] for purposes of 21 U.S.C. § 841(b)(1)(C).

Ms. Romero is terribly addicted to opiates.  She sold drugs to get drugs or cash to feed her own habit.  On October 26, 2018, her supplier instructed her, over the phone, to go next door and retrieve a "black" (heroin) and a "hard" (crack cocaine).  It turned out that only the heroin was there.  She picked up an ounce of heroin with the intent of distributing it and has taken responsibility for her role.  She pleaded guilty without a plea agreement.

The PSR describes Ms. Romero as a "mid-level" distributor (*see* PSR 17, ECF No. 689) and did not apply a mitigating role adjustment (*see id.* at 18-19).

---

[1] *See* Presentence Investigative Report (PSR) 18, ECF No. 689.

DISCUSSION

1.     OBJECTION

Ms. Romero objects to the PSR's characterization of her as a "mid-level" distributor.  While she did engage in drug distribution, her sales were directly to end-users. She did not supervise or direct anyone.  There is no evidence of any organizational level below Ms. Romero.

The presentence report refers to call numbers 2421 and 2423 as support for its conclusion that Ms. Romero is a mid-level distributor. (*See* PSR 16).  In call 2421, made on October 26, 2020 (the same day she picked up the one ounce of heroin), Ms. Romero and her supplier had the following exchange:

| | |
|---|---|
| Supplier: | "You wanted black, right?" |
| Romero: | "Well, we need . . . the hard now too. 'Cause I left Pie my other one. He got rid of it." |
| Supplier: | "Ooh, you're retarded leaving him that." |
| Romero: | "No, he's gonna give it right back.  Well no, he's gonna . . . I don't know." |

That Ms. Romero foolishly leant drugs to someone contrary to the wishes of her supplier is not evidence of a lower organizational level.

Call number 2423 also took place on October 26, 2020, and in Ms. Romero's supplier simply instructs her to pick up the drugs (for which she is being sentenced) from next door before the presumed supplier leaves ("Go right away . . . before this guy

leaves.")  Ms. Romero was picking up an ounce of heroin for her own retail sale.  She only engaged in retail distribution and was not a mid-level distributor.

2.      MOTION FOR MITIGATING ROLE ADJUSTMENT

The sentencing guidelines provide for a downward adjustment of two levels when a defendant is substantially less culpable than the average participant and is a "minor participant" in the criminal activity. *See* U.S. Sent'g Guidelines Manual § 3B1.2(b), cmt. n.3(A) (U.S. Sent'g Comm'n 2018).

"The defendant bears the burden of proving by a preponderance of the evidence whether an adjustment under § 3B1.2 is warranted." *United States v. Nkome*, 987 F.3d 1262, 1269 (10th Cir. 2021) (quoting *United States v. Salas*, 756 F.3d 1196, 1207 (10th Cir. 2014)).

A two level downward adjustment is applicable if the defendant was a "minor" participant, four levels if a "minimal" participant, and three levels if somewhere in between. § 3B1.2.  Whether to apply a minor, intermediate, or minimal adjustment "is based upon the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." § 3B1.2 cmt. n.3(C).

> a.   Ms. Romero Is Substantially less Culpable than the Average Participant in the Criminal Activity

A mitigating role adjustment is intended "for a defendant who plays a part in committing the offense that makes [her] substantially less culpable than the average participant." U.S.S.G. § 3B1.2 cmt. n.3(A). "A defendant who is accountable under § 1B1.3 (Relevant Conduct) only for the conduct in which the defendant is personally involved and who performs a limited function in the criminal activity may receive a[ mitigating role] adjustment." *Id.* Here, Ms. Romero is accountable only for the conduct in which she was personally involved. *See* PSR 18 ("The defendant is responsible for approximately one ounce of heroin.")

"'[W]hen determining the applicability of a mitigating-role adjustment, the defendant is to be compared with other participants 'in the criminal activity' – that is, those involved in the same criminal activity at issue in the defendant's case." *United States v. Nkome*, 987 F.3d 1262 (10th Cir. 2021) (quoting *United States v. Moreno*, 696 F. App'x 886, 889 (10th Cir. 2017)).

The substances and quantities alleged in the indictment against the respective defendants are distributed as follows:

| | Cocaine A-level | Cocaine C-level | Cocaine Base A-level | Cocaine Base B-level | Cocaine Base C-level | Heroin A-level | Heroin C-level | Fentanyl A-level | Fentanyl B-level | Fentanyl C-level | Meth. A-level | Meth. C-level | Firearms 922(g) | Firearms 924(c) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Padilla | √ | √ | √ | √ | √ | √ | | √ | | | | √ | | |
| R. Romero | | √ | | √ | | | √ | | √ | | | | | |
| Vigil | | √ | | √ | | | √ | | | √ | | | | |
| Hockman | | √ | | | | | | | | | √ | | | |
| Ruiz | | √ | | √ | | | | | | | | | | |
| L. Sanchez | | | | | | | √ | | | | | | √ | √ |
| Silva | | √ | | | | | | | | | | | | |
| T. Sanchez | | √ | | | | | | | | √ | | | | |
| S. Valdez | | √ | | | | | | | | | | | | |
| G. Atencio | | √ | | √ | √ | | | | | | | | | |
| J. Atencio | | √ | | √ | √ | | | | | | | | | |
| | | | | | | | | | | | | | | |
| A. Romero | | | | √ | | | √ | | | | | | | |

Out of the twelve defendants, Ashley Romero is the only defendant that is neither charged in a substantive count nor charged with a quantity implicating a statutory minimum sentence. (*See* Indictment 1-5, ECF No. 2.)  Eight of the twelve defendants were charged with at least a "B-level" offense or a serious 924(c) firearm offense.

This brief will compare Ms. Romero to the least culpable of her codefendants.[2]

      i.    *Amanda Silva*

Defendant Amanda Silva was charged only with a C-level cocaine offense. The Government described Amanda Silva's involvement as follows:

---

[2] The defendants that are not compared here have either a B-level offense, or higher, or a § 924(c) firearm offense.

> [Amanda Silva] was one of a dozen defendants indicted at the conclusion of
> the investigation. Over the course of the months that law enforcement was
> intercepting Robert Padilla's phone calls, agents intercepted several
> communications between Padilla and [Amanda Silva] where they discussed
> illegal controlled substances. *Although Padilla supplied other individuals*
> *who functioned as mid-level dealers*, [Amanda Silva] played a minor role in
> the organization.

(ECF No. 496 at 1-2) (internal citations omitted) (emphasis added).  The Government

agreed that Amanda Silva should receive a two-level minor role adjustment. (*Id.*)  As

stated in her Objection above, Ms. Romero was not a "mid-level" distributor, and her

involvement was not even that of Ms. Silva.  Ms. Romero likewise deserves a minor role

adjustment.

ii.     *Tomas Sanchez*

Mr. Sanchez was charged with a C-level cocaine offense and a C-level fentanyl

offense, in additional to conspiracy. (*See* ECF No. 2 at 3-5, 6-7.)  Mr. Sanchez agreed

with the Government to a specific sentence of twenty-four months.

iii.     *Sergio Valdez*

Mr. Valdez was also charged only with a C-level cocaine offense, in addition to

conspiracy. (*See* ECF No. 2 at 2-3, 8.)  His role was said to be as a courier. The

Government agreed that he deserved a two-level minor role adjustment, which was

reflected in his PSR. (*See* ECF No. 628 at 6.)  Ms. Romero's role in the conspiracy was

no greater than Mr. Valdez's.

As an aside, the Court found that Mr. Valdez warranted a two-level reduction for

acceptance of responsibility, even though, while awaiting sentencing in this case, he

"pulled out [a] firearm, shot into the ground, and also shot and hit the SUV [being driven by his wife] as [she] drove away." (*Id.* at 3.)

        iv.    *Marcos Ruiz*

Mr. Ruiz was charged with a C-level cocaine offense and *B-level* cocaine base offense. (*See* ECF No. 2 at 2-3, 8.)  Mr. Ruiz was "a narcotics trafficker who purchased quantities of cocaine for resale and to cook into crack cocaine." (ECF No. 599 at 2.)  He has a pending first degree murder case. (*Id.*)  Ms. Romero is clearly less culpable in the criminal activity than Mr. Ruiz.  The latter received an eighteen month sentence.  Ms. Romero will have served seventeen months by the date of her sentencing on July 12, 2022. (*See* PSR 1.)

      b.    Factors to Consider

The guidelines provide the following non-exhaustive list of factors to consider in determining whether to apply a minor, minimal, or intermediate adjustment:

        i.    "[T]he degree to which the defendant understood the scope and structure of the criminal activity"[3]

Ms. Romero worked directly with only one codefendant and did so to feed her own habit. Her familiarity with other members of the organization originated prior to any illicit activity.  That is to say, she grew up with some of the codefendants in the same small town.  Accordingly, her familiarity with other members of the organization is not, under these particular circumstances, an indication that she was more broadly involved in the

---

[3] U.S.S.G. § 3B1.2 cmt. n.3 (C).

organization.  Again, her interactions with the organization qua organization were limited

to one codefendant.

> ii.     "[T]he degree to which the defendant participated in the planning or organizing the criminal activity"[4]

Ms. Romero was not involved in any planning or organizing, other than assisting

in the planning of her *own* individual activity.

> iii.    "[T]he degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority"[5]

Ms. Romero had no decision-making authority, but operated with little discretion

under the direction of her supplier.

> iv.     [T]he nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts"[6]

As described above, Ms. Romero was only involved in her own retail sales, and

she operated, with little if any discretion, under the direction of one codefendant.  She

participated enough to feed her own habit. While retail sales are an essential function of

the organization, Ms. Romero's retail sales do not disqualify her from receiving a

mitigating role adjustment:

---

[4] *Id.*

[5] *Id.*

[6] *Id.*

> The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative.  Such a defendant may receive an adjustment [for mitigating role] if he or she is substantially less culpable than the average participant in the criminal activity.

§ 3B1.2 cmt. n.3 (C).

> v.    "[T]he degree to which the defendant stood to benefit from the criminal activity."[7]

Ms. Romero benefitted from her activity by obtaining drugs for her habit, or cash to buy drugs. Her interest was only in the commissions from her personal sales.  She had no proprietary interest in the activities of others in the organization.  The guidelines envision a role adjustment for someone with this kind of financial arrangement: "[A] defendant who does not have a proprietary interest in the criminal activity and who is *simply being paid to perform* certain tasks should be considered for a[ mitigating role] adjustment." § 3B1.3 cmt. n.3(C) (emphasis added).

In sum, Ms. Romero was substantially less culpable than the average participant in the criminal activity, and a mitigating role adjustment is in order.

---

[7] *Id.*

3.      MOTION, IN THE ALTERNATIVE, FOR DOWNWARD VARIANCE

As of the date of the sentencing hearing,[8] Ms. Romero will have served 511 days,

i.e., seventeen months. (*See* PSR 1.)  If the Court does not apply a mitigating role

adjustment, her guideline sentencing range will be twenty-one to twenty-seven months.

(*Id.* at 25.)  In that event, she requests a downward variance of four months from the

bottom end of the guideline range to seventeen months.

The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in

determining a sentence that is sufficient but not greater than necessary to achieve the

statutory purposes of federal sentencing enumerated in § 3553(a).  Those purposes are the

need for the sentence imposed

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

The Court also considers the factors in § 3553(a)(3)-(7), including the guidelines

sentencing range and the need to avoid unwarranted sentencing disparities.  The

---

[8] July 12, 2022.

following analysis demonstrates that a sentence of seventeen months is sufficient and not greater than necessary to accomplish these objectives.

a.      The Nature and Circumstance of the Offense

Ms. Romero was recorded in a telephone conversation with her supplier during which she was directed "to go to his house and look in a specific location for the drugs." (PSR 16.)  Ms. Romero found a single ounce of heroin.  She had been instructed to pick up a single unit of cocaine, as well, but that turned out not to be there. (*See id.*)

b.      The History and Characteristics of the Defendant

Ms. Romero is gravely addicted to opiates.  She lost custody of her then seven-year-old son because of it.  When she is released, she plans to live with her father and reestablish her relationship with her son.  She also plans on returning to school to become a physical therapist.

Her mother describes her as "always happy, and always joking. . . . She is an active, outgoing person who loves horses, participated in rodeo, and is a hard worker." (PSR 22.)  When she fell into drug use she became depressed, which was compounded when she lost custody of her son. (*Id.*)

Ms. Romero has been diagnosed with depression, anxiety, and post-traumatic stress disorder. (PSR at 23)  Her mother has confirmed her depression and post-traumatic stress disorder. (*Id.*)

Ms. Romero is motivated to stay sober so that she can get her son back, and "she

wants to go to school, work and get back to living her life." (PSR 24.)  She has her GED

and has already attended three years at Luna Community College for physical therapy.

      c.      The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Provide Adequate Deterrence, and Protect the Public from Further Crimes of the Defendant

These objectives are satisfied by a below-guideline sentence.  Ms. Romero's

guideline range is based primarily upon the type and quantity of substance she conspired

to distribute, i.e., one ounce of heroin. (*See* PSR 18-19.)  The recommended range also

takes into consideration a three-offense-level reduction for acceptance of responsibility.

(*Id.* at 19.)  Finally, because Ms. Romero fell off the wagon during pretrial release and

stopped reporting her whereabouts, she was assessed two additional levels for obstruction

of justice. (*See* PSR 18-19.)  However, nowhere in this calculation is Ms. Romero's

relatively minor participation in the overall criminal activity accounted for.  Nor does the

range account for her terrible drug addiction and her motivation to participate, not out of

disrespect for the law, but out desperation to feed her habit.  Finally, the guideline range

does not take into consideration the natural consequences of her actions, in particular, the

loss of her relationship with her child.

Under these circumstances, a sentence less than the guideline range is sufficient to

teach respect for the law and to provide a just sentence reflective of the seriousness of the

offense.

d.      The Need to Avoid Unwarranted Sentencing Disparities Between
        Defendants Who Have Committed Similar Crimes

Adding to the reasons stated above for a below guideline sentence are the

comparative sentences of her codefendants.  In particular, Ms. Romero was no more

involved in the criminal activity, not more involved in the organization, no more involved

in large or multiple quantities of drugs, and no more involved in directing or supervising

others than her codefendants Amanda Silva and Sergio Valdez.  Had Ms. Romero

received a two level mitigating role adjustment like they did, her sentencing range would

be fifteen to twenty-one months, and a time-served sentence of seventeen months would

be within her guideline range. [9]

Accordingly, because some of Ms. Romero's codefendants, who were no less

responsible than her, received reductions based on their level of comparative

responsibility, and because the Guidelines do not take into consideration Ms. Romero's

desperate motivation to feed her drug addiction, nor the loss of her relationship with her

child, nor that she has nearly completed her schooling to be a physical therapist, a time-

served, seventeen-months sentence is sufficient, but not greater than necessary, to

accomplish the purposes of federal sentencing in her case.

---

[9] While Ms. Romero is not privy to all the circumstances, it bears mentioning that her codefendant
Marcos Ruiz received a eighteen month total sentence on three counts of conviction, even though he was
originally charge with a B-level amount of cocaine base.  (*See* ECF No. 2 at 3.)

CONCLUSION

For the foregoing reasons, Ms. Romero was not a "mid-level distributor." Rather,

she was among the least culpable of those involved in the criminal activity, and a

mitigating role adjustment is appropriate.  Moreover, a sentence of seventeen months is

sufficient to accomplish the sentencing purposes set forth in 18 U.S.C. § 3553(a).

WHEREFORE, Defendant Ashley Romero respectfully requests the Court to

sustain her Objection, to apply a two-level minor role adjustment, or alternatively to

apply a downward variance, and in either case to impose a sentence of seventeen months.


Respectfully submitted,

Gregory M. Acton
Acton Law Office, PC
3811 Atrisco Dr. NW, Suite A
Albuquerque, NM 87120
(505) 338-0453

*Counsel for Defendant Ashley Romero*

I HEREBY CERTIFY that on this 28th day of June 2022, I filed the foregoing
document electronically through the CM/ECF system, which caused all counsel of record
to be served by electronic means, as more fully reflected in the Notice of Electronic
Filing.

Gregory M. Acton